## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

PROFESSIONAL TENNIS PLAYERS
ASSOCIATION and WINNERS
ALLIANCE, INC.,

    Plaintiffs,

    v.

WAJID MIR SYED, a/k/a WAJID MIR,

    Defendant.

Case No. 1:26-cv-7886

**JURY TRIAL DEMANDED**

---

**PLAINTIFF PROFESSIONAL TENNIS PLAYERS ASSOCIATION'S APPLICATION
FOR TEMPORARY RESTRAINING ORDER AND
<u>MOTION FOR PRELIMINARY INJUNCTION</u>**

Plaintiff Professional Tennis Players Association (the "PTPA") respectfully moves under Fed. R. Civ. P. 65 for a temporary restraining order ("TRO") and a preliminary injunction against the PTPA's former General Counsel, Defendant Wajid Mir Syed ("Mir"). The Court should (1) immediately issue a TRO enjoining Mir from continuing to hold himself out as representing, employed by, or authorized to speak or act for the PTPA and from continuing to disclose the PTPA's confidential and privileged information, and (2) set an expedited hearing schedule, including expedited discovery, on Plaintiff's motion for a preliminary injunction.

## INTRODUCTION

Mir served as the General Counsel and Executive Vice President of the PTPA. On June 4, 2026, the PTPA terminated him for gross malfeasance and revoked his authority to act for the organization. Mir has refused to accept that he is gone. He continues to represent that he remains the General Counsel and can speak and act for it, and he has disclosed and used, for his own benefit, privileged and confidential information obtained in his capacity as the PTPA's lawyer.

This is all happening during Wimbledon, which is scheduled to conclude on July 12, 2026 and where Mir is currently interacting with players, agents, and officials,[1] and at a pivotal moment in the PTPA's most consequential undertaking: its federal antitrust action on behalf of players against the governing bodies of professional tennis. Mir has improperly instructed the PTPA's antitrust counsel to take his direction and appears to be having unauthorized settlement discussions with one of the defendants, and the antitrust defendants have already invoked the confusion Mir has created to argue that the PTPA should be dismissed from that case. Each day that Mir falsely poses as the PTPA's General Counsel inflicts fresh and irreparable harm on the PTPA's ability to govern itself, direct its lawyers, and preserve its confidences.

---

[1] *See* The Championships, Wimbledon, https://www.wimbledon.com (last visited June 30, 2026).

The PTPA respectfully asks the Court for protection by enjoining Mir from holding himself out as the PTPA's attorney or agent (including attempting to direct its litigation counsel or engage other counsel on behalf of the PTPA), and from using or disclosing the PTPA's confidential and privileged information. The PTPA is likely to succeed on the merits of its claims for *ultra vires* conduct and breaches of fiduciary duty: a validly removed attorney cannot speak or act for the organization, and his attempts to do so violate the continuing duties that a lawyer owes a former client. The PTPA has no adequate remedy at law: the paralysis of its governance and interference with its litigation cannot be quantified and the disclosure of privileged information cannot be undone. The remaining factors also favor relief: a narrow order would take nothing from Mir, while the public interest strongly favors holding a former lawyer to his continuing duties of loyalty and confidentiality.

## BACKGROUND[2]

### I.        The PTPA, Winners Alliance, and the Pending Antitrust Litigation.

The PTPA is a Washington, D.C. nonprofit founded to give professional tennis players an independent voice in a sport that pays them a fraction of the revenue they generate and has long denied them a say in how the sport is run. ¶1; R.D.¶3.[3] Winners Alliance, Inc. was created to support the PTPA, endow its work, and advance its mission. ¶1. The PTPA's most consequential undertaking is a federal antitrust suit. The suit alleges that tour organizers and Grand Slam tournament operators conspired to suppress player compensation and restrain competition for player

---

[2] Paragraphs of the complaint are cited as "¶__", the Declaration of Romain Rosenberg is cited as "R.D.", and the Declaration of Ahmad Nassar is cited as "N.D."

[3] As alleged in the Complaint, this Court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1), as it is an action between citizens of different states and the amount in controversy exceeds $75,000, measured both by the damages and other compensation Plaintiff seeks to recover from Mir and by the value of the rights that it seeks to protect. ¶¶11, 13; *see Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977); *Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 541–42 (7th Cir. 2006).

services. ¶17; R.D.¶10; Third Am. Compl. ¶¶1–4, *Pospisil v. ATP Tour, Inc.*, No. 1:25-cv-02207 (S.D.N.Y.) (the "Antitrust Action"), ECF No. 210. One defendant has settled and agreed to cooperate, and the case is at a pivotal stage where additional settlements are possible. ¶17; R.D.¶10.

The PTPA is governed by an Executive Committee composed of player representatives, which serves as its board of directors, and is led by an Executive Director, who carries out executive functions, including hiring and firing employees and engaging and directing attorneys. ¶¶22,25; R.D.¶9; *id.*Ex.C at 1–2; *id.*Ex.D art. IV, §2(d)(v). Three Executive Committee members were designated in the PTPA's articles of incorporation; one of those (Vasek Pospisil) remains on the Executive Committee to this day. Other Executive Committee members can be either elected by the PTPA's membership or appointed by the Executive Committee to fill vacancies. ¶¶23–24; R.D.Ex.A art. V; *id.*Ex.D art. IV, §1(b); D.C. Code § 29-406.10(a). No officer or employee of the PTPA, including the Executive Director, has the power to appoint or remove members of the Committee or otherwise reconstitute it. ¶25; R.D.Ex.A art. V; *id.*Ex.D, art. IV, §1(b),(f).

**II.     Mir's Role and His Attempt to Seize Control of the PTPA.**

Winners Alliance hired Mir in 2022 as an at-will employee. ¶27; N.D.¶7&Ex.A. Mir was offered a base salary from Winners Alliance, bonuses tied to Mir's ability to sign players up to Winners Alliance's group licensing programs, and significant equity options in Winners Alliance. N.D.Ex.A. As a condition of his employment, and in exchange for this substantial compensation, Mir signed an Employee Obligations, Non-Disclosure and Proprietary Information Agreement with Winners Alliance (the "Agreement"). ¶28; N.D.Ex.B. The Agreement requires Mir, both during and after his employment, to hold the confidential or proprietary information of both Winners Alliance and third parties such as the PTPA for whom Winners Alliance provides services in the strictest confidence and to not disclose or use that information improperly or for unauthorized purposes. ¶28; N.D.Ex.B §§1.1–1.4.

3

In mid-2023, Ahmad Nassar, CEO of Winners Alliance and the PTPA's then-Executive Director, appointed Mir the PTPA's General Counsel and Executive Vice President for Player Engagement. ¶¶27,30; N.D.¶¶1,5,7,9. As a PTPA officer and its senior lawyer, Mir was entrusted with the PTPA's confidences and with authority to act on its behalf. ¶¶30–31.

Nassar stepped down as Executive Director in March 2026. ¶26; N.D.¶10. Mir lobbied to succeed him, but the Executive Committee appointed Romain Rosenberg instead, a decision Mir couldn't accept. ¶32; N.D.¶10; R.D.¶25. When Rosenberg asked Mir to help identify active, respected players to recommend for the Executive Committee to consider appointing to open seats on the Committee, Mir used the request as cover to try to seize control of the PTPA, its finances, and the Antitrust Action. ¶¶35–36; R.D.¶16. He and Anastasia Skavronskaia, a PTPA staff member, recruited a slate of players and had them sign one-page "Executive Committee Member Acknowledgment" forms, which purported to "confirm" their "appointment" to the Committee, and falsely and without authorization told these players they had been appointed to the Committee. ¶¶37–38; R.D.¶¶13–16; R.D.Ex.J, Ex.7. The duly serving Executive Committee never appointed or ratified Mir's candidates. ¶38; R.D.¶16.

### III.     The PTPA Terminates Mir for Gross Malfeasance.

On May 31, 2026, the PTPA received a confidential demand letter from counsel for Skavronskaia asserting a purported employment-related claim against the PTPA and Rosenberg. ¶43; R.D.¶17. Mir demanded to control the investigation, but because Mir was also a witness, Rosenberg asked members of the Committee to retain independent outside counsel instead. ¶44; R.D.¶18. Mir reacted by threatening Rosenberg personally and professionally, disclosing the confidential demand letter and allegations to players outside the Committee, and pressing the Committee to remove Rosenberg because of the unsubstantiated allegations. ¶¶45–46; R.D.¶¶19–20. He also began claiming that Committee members who were not partial to him were illegitimate.

¶46; R.D.¶19.

On June 3, Rosenberg decided to terminate Mir for cause, and a supermajority of the Committee concurred. ¶¶47–48; R.D.¶¶21–22. On June 4, Committee member and PTPA co-founder Vasek Pospisil notified Mir of his termination, and Rosenberg directed that Mir's PTPA email access and corporate credit card be cut off. ¶¶4,50; R.D.¶¶23–24&Ex.G; N.D.¶15. The termination confirmed that Mir holds "no role, title, or authority" and that his duties to protect the PTPA's "confidential" and "privileged and attorney work-product" information "continue in full force." R.D.¶¶23–24&Ex.G.

### IV. Mir Refuses To Accept His Removal.

Mir won't step aside. He continues to hold himself out as the PTPA's General Counsel and as authorized to act and speak for the Association, asserting that the PTPA's leadership lacked the power to remove him and that he is empowered to act for the organization under the shadow committee he purported to install. ¶51; R.D.¶25. He has told the PTPA's antitrust counsel that he, not PTPA leadership, is in charge and that counsel should take direction from him. ¶53; R.D.¶27. His competing claim of authority has left counsel facing conflicting directives and has impaired the PTPA's ability to instruct its counsel and manage the Antitrust Action. *Id.* Mir also retained Clifford Chance to send a demand letter in the PTPA's name to sitting members of the Executive Committee and engage with Skavronskaia's counsel on her employment claim. ¶¶52,54; R.D.¶26. And Mir has disclosed and used privileged and confidential information he obtained as the PTPA's counsel for his own benefit, including its antitrust litigation strategy and settlement posture and the existence and allegations in the confidential employment demand letter described above, none of which the PTPA authorized or waived. ¶55; R.D.¶29.

On June 25, 2026, attorneys falsely purporting to represent the PTPA under Mir's shadow committee, along with two aligned players, sued four members of the PTPA's Executive

Committee, Rosenberg, Winners Alliance, and Nassar in the Superior Court of the District of Columbia (the "D.C. Action"), and moved for a TRO to nullify Mir's termination and bar the PTPA's actual leadership from acting for the organization. *Zheng v. Pospisil*, No. 2026-CAB-004387 (D.C. Super. Ct.); R.D.¶29&Ex.I. Mir is not a party to that action, but he is almost certainly directing it, and he submitted a declaration in support of the plaintiffs' motion and supplied the plaintiffs and their counsel with confidential and privileged information about the PTPA's receipt of the demand letter and its contents. ¶¶43,55; R.D.¶29&Exs.I,J.

This timing is not accidental. As explained above, Wimbledon is ongoing, and Mir's publicly reported machinations are circulating among players and damaging the PTPA's reputation. One player asked by the PTPA's legitimate leadership to serve as a player representative on the Executive Committee initially expressed interest but then withdrew because of the uncertainty created by Mir's actions. ¶60; R.D.¶31. The antitrust case—the most important undertaking in the PTPA's history—is approaching discovery and is at its most vulnerable to disruption. ¶6; R.D.¶10. The fallout is already concrete: The ATP, a defendant in the Antitrust Action, recently intimated that it is progressing toward a settlement, suggesting that Mir is communicating with a litigation adversary about resolving the case while purporting to act for the PTPA. ¶57; R.D.¶32. And on July 2, 2026, the Antitrust Action defendants seized on the very governance dispute Mir manufactured, filing a letter urging the court to dismiss the PTPA as a plaintiff because its "governance impasse threatens to make impractical its participation." R.D.Ex.K at 1.

## LEGAL STANDARD

A movant for a temporary restraining order must satisfy the same standard that governs a preliminary injunction. *Bevis v. City of Naperville*, 657 F. Supp. 3d 1052, 1058 (N.D. Ill. 2023). As a threshold matter, the movant must show that it is likely to succeed on the merits and that, without relief, it has no adequate remedy at law and will suffer irreparable harm. *Cassell v. Snyders*,

990 F.3d 539, 544–45 (7th Cir. 2021). If that threshold is met, then the Court weighs the balance of equities and the public interest on a sliding scale, under which a stronger showing on the merits lessens the showing required on the balance of harms. *Id*. at 545.

## ARGUMENT

### I.     The PTPA Is Likely To Succeed on the Merits.

The complaint asserts claims for *ultra vires* action under D.C. law (Count I), breach of fiduciary duty (Counts II [attorney] and III [officer/agent]), breach of the duty of loyalty (Count IV), breach of contract (Count V), and conversion (Count VI). ¶¶63–93. But the gravamen of the claims is the same, and to succeed on the merits as relevant to the relief sought in this motion, the PTPA need only show that Mir continues to purport to act as the PTPA's lawyer and agent even after he was terminated and discharged and has disclosed and is threatening to disclose the PTPA's confidential information. The PTPA easily meets this bar.

*A.   The PTPA Is Likely to Succeed on Its Ultra Vires Claim.*

D.C. law authorizes a nonprofit corporation to assert an *ultra vires* claim against a former officer, employee, or agent to challenge his power to act. D.C. Code § 29-403.04(b)(2).[4] An act is *ultra vires* where the actor exceeds, or acts in a manner expressly prohibited by, the powers conferred by the corporation's articles, bylaws, or governing statute. *Compton v. Alpha Kappa Alpha Sorority, Inc.*, 64 F. Supp. 3d 1, 18 (D.D.C. 2014), *aff'd*, 639 F. App'x 3 (D.C. Cir. 2016). And a court may enjoin a former officer or agent from continuing to exercise authority he no longer holds. *See Daley v. Alpha Kappa Alpha Sorority, Inc.*, 26 A.3d 723, 730–31 (D.C. 2011) (sustaining

---

[4] A federal court sitting in diversity applies the forum's choice-of-law rules, and Illinois follows the internal-affairs doctrine. *CDX Liquidating Tr. v. Venrock Assoc.*, 640 F.3d 209, 212 (7th Cir. 2011); *see Edgar v. MITE Corp.*, 457 U.S. 624, 645 (1982). Because the PTPA is incorporated in the District of Columbia, D.C. law governs its internal affairs, including the authority and duties of its officers and agents. *See, e.g.*, *CDX Liquidating Tr.*, 640 F.3d at 212.

complaint seeking injunctive relief under *ultra vires* statute); *In re Banks*, 561 A.2d 158, 168 (D.C. 1987) (enjoining a person from holding himself out as authorized to act as counsel); Restatement (Third) of the Law Governing Lawyers ("Restatement Lawyers") § 55(2).[5]

Mir does not dispute that he continues to purport to act for the PTPA, and the evidence clearly shows he is: He has publicly asserted that he is still the General Counsel and EVP and still speaks for the PTPA, including in a recent declaration in the D.C. Action, and he has attempted to direct its antitrust counsel and contact opposing counsel in ongoing litigation. R.D.¶¶22–29&Exs.I,J. Mir *does* dispute that he was terminated, but the PTPA is more than just "likely" to prevail on that issue—it is certain to. Mir was an at-will employee, his termination was unmistakably effectuated and communicated to him, and the PTPA complied with its own governance documents and District of Columbia statutes governing nonprofits in removing him from his positions.

Under the D.C. Nonprofit Corporation Act (the "Act"), an officer may be removed at any time, with or without cause, by the board of directors, the officer who appointed him, that appointing officer's successor, or any other officer authorized by the articles, bylaws, or board. D.C. Code § 29-406.43(b), (c); *see id.* § 29-406.40. Authority to act for a corporation flows from the principal, and a principal may revoke an agent's authority at any time. *Makins v. District of Columbia*, 861 A.2d 590, 596–97 (D.C. 2004) (en banc); *Tinney v. Duckett*, 141 A.2d 192, 193 (D.C. Mun. Ct. App. 1958).[6]

Here, the PTPA is likely to succeed in showing that it terminated Mir for gross malfeasance

---

[5] D.C. courts "give substantial weight to the approach taken by the Restatement [Lawyers]." *In re Nace*, 98 A.3d 967, 975–76 (D.C. 2014); *see also Makins v. District of Columbia*, 861 A.2d 590, 593–96 (D.C. 2004) (en banc) (relying on Restatement (Second) of Agency and Restatement Lawyers "to determine whether the attorney or agent had authority to bind his principal" in the context of settlement agreements).

[6] This rule applies especially to a discharged lawyer: "a fired lawyer has no entitlement . . . to continue acting on the ex-client's behalf," even if the discharge breaches a contract. *See Cnty., Mun. Emps.' Supervisors' & Foremen's Union Local 1001 v. Laborers' Int'l Union*, 365 F.3d 576, 579 (7th Cir. 2004).

on June 4, 2026, relieving him of all duties and revoking all his authority. R.D.¶23&Ex.G. Even so, Mir was an at-will employee who could be terminated with or without cause or advance notice. N.D.Ex.A. Mir's termination was clearly communicated to him; as he has conceded, his access to his PTPA email account and other PTPA property has been revoked; and he was removed from payroll. All are unmistakable signs that the PTPA has fired him. R.D.Ex.G at 1; R.D.Ex.J ¶13.

Counsel for Mir's shadow committee have suggested three reasons why Mir's termination was ineffective. All are likely (if not certainly) meritless. *First*, counsel have contended that the Executive Committee lacked a quorum and could not fire him. R.D.Ex.H at 2. But this is irrelevant. Under D.C. law, an officer may be removed with or without cause by his appointing officer's successor. D.C. Code §§ 29-406.43(b)–(c). Mir was appointed by Nassar and removed by Rosenberg, Nassar's successor. N.D.¶9; R.D.¶¶21–24. Moreover, the PTPA bylaws provide that unless countermanded by a majority of the Committee (which did not happen here, as a supermajority in fact agreed with Rosenberg's decision), the Executive Director "shall hire and compensate such employees and shall engage such independent contractors, attorneys, and accountants as the Executive Director determines are in the best interests of the Association" and "shall carry out all executive functions of the Association and shall make all decisions for the Association not expressly committed to the Executive Committee or the Full Membership by this Constitution and Bylaws." R.D.Ex.D, art. IV, §§2(d)(v)–(vii); *see* R.D.Ex.C at 2 (the Executive Director is "authorized, empowered and directed to do and perform all such acts and things as are customary for the chief executive of nonprofit corporations like the Association"). Firing subordinate officers and employees is an executive function customary for the chief executive of a nonprofit corporation, and not one that was expressly committed to the Executive Committee or the membership under the Bylaws. The Court therefore need not resolve any dispute about the Executive Committee's composition or quorum for the PTPA to succeed in showing that Mir was terminated.

*Second*, putting aside that Rosenberg was entitled to terminate Mir without Executive Committee approval, counsel have further implied that Mir was not properly terminated because the Executive Committee was usurping the powers of Mir's shadow executive committee. *See* R.D.Ex.H at 2. This is also wrong because Mir's hand-selected recruits were never appointed to the Executive Committee and lacked authority to countermand Mir's termination or do anything else. The PTPA articles of incorporation provide that "Executive Committee Members shall be elected by a vote of the Corporation's membership entitled to vote pursuant to the Constitution and Bylaws." R.D.Ex. A, art. V. The PTPA bylaws provide that if a member of the Executive Committee "resigns or is removed from office … before the end of" his term, "the remaining members of the Executive Committee shall, by majority vote, be entitled to appoint any Full Member to serve the remainder" of that term. R.D.Ex. D, art. IV, §1(b)(v). Mir attempted his takeover not through these mechanisms but by persuading players to sign a one-page form stating that the individual "confirms the acceptance of an appointment to the Executive Committee." R.D.Ex.J, Ex.7. Nowhere is this authorized.[7] Any actions taken by Mir's shadow appointees are therefore a nullity. *See, e.g.*, *U.S. Inst. of Peace v. Jackson*, 783 F. Supp. 3d 316, 376 (D.D.C. 2025) (actions taken by improperly appointed board "were *ultra vires* and lacked legal effect").

*Third*, counsel have contended that the terms of previously qualified Committee members expired, leaving their seats vacant. R.D.Ex.H at 2. Again putting aside that Rosenberg could terminate Mir without approval, this theory fails too. The articles of incorporation provide that Pospisil "shall serve … until his … successor shall have been duly elected and qualified," R.D.Ex.A, art. V, meaning that Pospisil's term *cannot* have expired despite the three-year term limit in the bylaws, *see* D.C. Code § 29-402.06(b) (in the event of a conflict, articles of incorporation prevail

---

[7] Mir's own allies admit that the Executive Director has no power to appoint or reconstitute the Executive Committee, R.D.Ex.I¶43, and Mir, Rosenberg's subordinate, had even less power.

over bylaws). Moreover, for all of the Executive Committee members, D.C. Code § 29-406.05(d) provides that a director whose term has expired "shall continue to serve" until a successor is duly elected, appointed, or designated and takes office.

### B. The PTPA Is Likely to Succeed on Its Breach of Fiduciary Duty Claims.

Under D.C. law, a claim for breach of fiduciary duty has three elements: (1) a fiduciary relationship exists between the parties, (2) a breach of duty arises from that relationship, and (3) the breach causes injury or damages to the plaintiff. *Jenkins v. Howard Univ.,* 123 F.4th 1343, 1349 (D.C. Cir. 2024).[8] The PTPA is likely to succeed in satisfying each of these elements.

As the PTPA's attorney, officer, and agent, Mir owed and continues to owe the PTPA duties of loyalty requiring him not to disclose the PTPA's confidential information. *See Bolton v. Crowley, Hoge & Fein, P.C.*, 110 A.3d 575, 583–84 (D.C. 2015); D.C. R. Prof'l Conduct 1.6, 1.9; Restatement Lawyers §§ 59–60; *see also Adams v. Franklin*, 924 A.2d 993, 997 (D.C. 2007) (explaining that a lawyer's duty to preserve a client's confidences and secrets is broader than the attorney-client privilege and "continues after termination of the lawyer's employment"); Restatement (Third) of Agency § 8.05(2) (duty not to use or communicate the principal's confidential information survives the end of agency). And a discharged lawyer has an absolute duty to cease representing his former client. D.C. R. Prof'l Conduct 1.16(a)(3). A lawyer who breaches these duties is subject to an injunction. Restatement Lawyers §§ 49, 55; *see also Banks*, 561 A.2d at 168 (a court may enjoin a person from holding himself out as authorized to act as counsel).

The PTPA also is likely to succeed in showing that Mir's conduct violates these duties,

---

[8] Under Illinois choice-of-law rules, the law applicable to fiduciary claims that do not arise from internal corporate governance concerns is determined by the most significant relationship test, *Rohlfing v. Manor Care, Inc.*, 172 F.R.D. 330, 340 (N.D. Ill. 1997), which here would point to D.C. But the elements of a breach of fiduciary claim are similar under Illinois law. *See Advantage Mktg. Grp., Inc. v. Keane*, 2019 IL App (1st) 181126, ¶22, 143 N.E.3d 139.

thereby injuring and threatening to further injure the PTPA. Mir is disclosing and misusing the PTPA's confidences for his own benefit and capitalizing on the trust once placed in him, which has since been revoked, to the PTPA's detriment. R.D.¶¶23–29; *see Bolton*, 110 A.3d at 584 (explaining that an attorney can breach fiduciary duty to previous clients by using confidential information against them in related matter). And he has violated his Rule 1.16(a)(3) obligation to stop representing the PTPA after his termination. *See In re Klayman*, 282 A.3d 584, 596–97 (D.C. 2022) (Rule 1.16(a)(3) violated where lawyer "continued to take action in [the client's] case even after she discharged him"); *Griva v. Davison*, 637 A.2d 830, 847–48 (D.C. 1994) (violation of professional rules is "conclusive" evidence of a breach of fiduciary obligations) (citation modified).

## II. Plaintiff Has No Adequate Remedy at Law and Will Suffer Irreparable Harm Absent an Injunction.

Mir's public misrepresentations about his affiliation and authority are causing irreparable harm in three primary ways: (1) by damaging the PTPA's goodwill, reputation, business, and relationships through the appearance of infighting and disorganization; (2) by compromising the confidentiality of the PTPA's sensitive and privileged information; and (3) by interfering with the PTPA's ability to litigate the Antitrust Action. Harm is irreparable where the legal remedy is "seriously deficient as compared to the harm suffered," including where the nature of the loss makes damages very difficult to calculate. *Foodcomm Int'l v. Barry*, 328 F.3d 300, 304 (7th Cir. 2003).

First, Mir's improper conduct incorrectly makes the PTPA appear too divided and disorganized to govern itself or to represent the players who depend on it and incorrectly implies that the PTPA may have suddenly been taken over through a corporate insurgency that ousted most of the Executive Committee that has overseen the PTPA since January 2023. This erodes the credibility and authority underlying the PTPA's advocacy and its standing to speak for players, and discourages players and other stakeholders from engaging with it. Already, one player who

12

expressed interest in serving as a player representative on the Executive Committee has withdrawn because of the uncertainty created by Mir's actions. ¶60; R.D.¶31. This loss of institutional standing and player confidence—components of the PTPA's goodwill, reputation, and relationships—grows with each day that Mir persists, and cannot be measured or repaired by money damages. Indeed, "it is precisely the difficulty of pinning down what business," goodwill, reputation, and relationships have "been or will be lost that makes [such] injury 'irreparable.'" *Life Spine, Inc. v. Aegis Spine, Inc.*, 8 F.4th 531, 545–46 (7th Cir. 2021).

Second, courts in this District also enjoin former insiders who disclose or threaten to disclose confidential information, finding the resulting harm to goodwill and relationships irreparable. *See, e.g.*, *Aon Risk Servs. Cos., Inc. v. Alliant Ins. Servs., Inc.*, 415 F. Supp. 3d 843, 851–52 (N.D. Ill. 2019). The threatened disclosure of a client's privileged information by a former attorney likewise qualifies as irreparable harm warranting an injunction. *X Corp. v. Doe*, 805 F. Supp. 1298, 1304 (E.D. Va. 1992), *aff'd sub nom. Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir. 1994). And Mir agreed in the Agreement that "any threatened or actual violation" of his non-disclosure obligations "will constitute immediate and irreparable injury." N.D.Ex.B §9.1.

Finally, as long as Mir holds himself out as the PTPA's lawyer, third parties (including the PTPA's own litigation counsel) may claim to be uncertain who speaks for the PTPA. That uncertainty paralyzes the PTPA's ability to direct its lawyers, govern its affairs, and manage the Antitrust Action on which its members' interests depend. And courts protect a litigant's ability to work with its lawyers and prosecute its case, treating interference with that relationship as harm that a later judgment cannot undo. *See In re Barnett*, 97 F.3d 181, 183–84 (7th Cir. 1996); *see also In re Ti.B.*, 762 A.2d 20, 28–29 (D.C. 2000) (vacating orders restricting litigant's access to his lawyer, because "every litigant has a powerful interest in being able to retain and consult freely with an attorney" (citation modified)). These injuries are not hypothetical. The antitrust defendants have

13

already exploited the uncertainty Mir created, telling the court that "[i]t is not clear how or if plaintiffs' counsel can negotiate this conflict or discern from whom it must take direction on behalf of PTPA" and urging that the PTPA be dismissed. R.D.Ex.K at 1, 3.

### III. The Balance of Equities Favors an Injunction.

Because Plaintiff's showing on the merits is strong, the balance of harms need not weigh as heavily in its favor. *Cassell*, 990 F.3d at 545. Even so, Mir faces no harm to weigh in the balance. An injunction would take nothing from Mir to which he is entitled. He would be restrained only from unlawfully holding himself out as the PTPA's lawyer and misusing its confidences but would be free to pursue lawful work and speak about his own affairs. *UL LLC v. Callington*, No. 24-cv-05631, 2025 WL 2257375, at *13 (N.D. Ill. Aug. 7, 2025) (defendant "suffers no irreparable harm from having to conform his conduct to the law").

### IV. The Public Interest Strongly Favors an Injunction.

The public interest favors enforcing a lawyer's duties of loyalty and confidentiality and preventing a former fiduciary from using a client's confidences against it. *Analytica, Inc. v. NPD Research, Inc.*, 708 F.2d 1263, 1269 (7th Cir. 1983). The public interest is also served by ensuring that an organization is directed only by those authorized to act for it. *See Int'l Bhd. of Teamsters v. Local Union 705*, 827 F. Supp. 513, 514, 516 (N.D. Ill. 1993) (public interest favored preliminary injunction barring officers whose authority had been suspended from "representing themselves as the authorized officers or representatives" of the union); *Nat'l Confederation of Am. Ethnic Groups v. Genys*, 457 A.2d 395, 396 (D.C. 1983) (affirming injunction barring invalidly elected persons "from acting or representing themselves as officers").[9]

---

[9] To the extent Mir claims he was wrongly terminated or removed in violation of a contract or other right, *but see* N.D.Ex.A (Mir's employment was at will); D.C. Code § 29-406.44(a) ("The appointment of an officer shall not itself create contract rights."), he is free to assert such a claim, but that does not

## V.     Bond Should Be Excused.

The security required by Rule 65(c) may be excused or set at a nominal level "where the enjoined party does not demonstrate it will incur any damages from the injunction." *Chicago Women in Trades v. Trump*, 778 F. Supp. 3d 959, 996 (N.D. Ill. 2025) (citation modified). Because an injunction would not cause Mir any damages (it would merely hold him to obligations he already owes), no bond, or a nominal one, is warranted. Moreover, Mir waived the right to a bond in an action for breach of the Agreement. N.D.Ex.B §9.1.

### CONCLUSION

For the foregoing reasons, the PTPA respectfully requests that the Court enter a temporary restraining order enjoining Wajid Mir Syed from (i) representing that he is employed by, or authorized to act or speak for, the PTPA, including as its General Counsel; (ii) communicating with or directing the PTPA's counsel, or otherwise purporting to act for the PTPA before third parties; and (iii) using or disclosing the PTPA's confidential or privileged information.

---

change that he no longer has authority to act for or represent the PTPA. *See id.* § 29-406.44(b) ("An officer's removal shall not affect the officer's contract rights, if any, with the nonprofit corporation.").

15

Dated:   July 7, 2026                                   Respectfully submitted,

/s/ Daniel D. Birk
Nathan P. Eimer
Daniel D. Birk
Gregory M. Schweizer
Mila B. Rusafova
EIMER STAHL LLP
224 S. Michigan Ave., Suite 1100
Chicago, IL 60604
Telephone: (312) 660-7600
Fax: (312) 692-1718
neimer@eimerstahl.com
dbirk@eimerstahl.com
gschweizer@eimerstahl.com
mrusafova@eimerstahl.com

*Counsel for Plaintiff*
*Professional Tennis Players Association*

16